UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Tierre Theo Walton,

        Plaintiff,

v.

Blue Earth County, and Bradley Peterson,
*Sheriff, Blue Earth County*,

        Defendants.

Case No. 0:20-cv-00165-ECT-KMM

**REPORT AND RECOMMENDATION**

---

This matter is before the Court for a report and recommendation on Defendants' Motion to Dismiss pursuant to Federal Rule of Procedure 12(b)(6) and 12(c). [ECF No. 35]. Defendants argue that Plaintiff Tierre Walton's claim for injunctive relief has been rendered moot and that he does not raise a cognizable claim for civil damages. For the reasons that follow, the Court recommends granting Defendants' motion.

## I.    BACKGROUND

On January 10, 2020, while incarcerated at Blue Earth County Jail, Mr. Walton filed a complaint pursuant to 42 U.S.C. § 1983. [ECF No. 1]. In his complaint, Mr. Walton asserts that he was provided inadequate medical care for a gunshot wound and other medical conditions. Specifically, he claims that he was denied access to a wheelchair, was not taken to a hospital for blood pressure spikes despite a risk of blood clots, and received no assistance with pain or sleeping issues. [Compl. 4–5, ECF No. 1]. Mr. Walton named Blue Earth County Sheriff, Bradley Peterson, and Blue Earth County as the defendants, and indicated that he sought an "order to provide adequate medical care – transfer to medical unit to

1

monitor and provide sleep/movement accommodations." Defendants answered the complaint on February 21, 2020. [ECF No. 5].

On June 5, 2020, the Court issued an order in response to several letters from Mr. Walton which appeared to raise issues concerning events that occurred after he had filed his complaint. [Order, ECF No. 25]. The Court sought clarification as to whether Mr. Walton intended to supplement or amend his complaint with the letters and extended the deadline for him to do so. [Order, ECF No. 25]. Mr. Walton responded to the Court's order with a letter stating that he wanted to make "all letters . . . a part of the original complaint." [Letter, ECF No. 26]. The Court denied construing Mr. Walton's letters as supplemental pleadings. [Order, ECF No. 27]. Mr. Walton then filed two documents, each titled "Proposed Supplemental Complaint," and each containing a list of individuals he merely described as "involved." [ECF Nos. 28, 30]. On July 13, 2020, The Court held that the proposed supplemental complaints "will have no effect, and this case remains limited to the claims set forth in Mr. Walton's original Complaint." [Order 2, ECF No. 31].

On September 23, 2020, a letter from Mr. Walton was entered informing the Court that he had been transferred to St. Cloud, Minnesota. [ECF No. 34]. On October 9, 2020, Defendants filed the Motion to Dismiss that is at issue here, arguing, inter alia, that Mr. Walton's transfer rendered his claim for injunctive relief moot because he was no longer subject to the conditions of which he complained. [Mem. 4–6, ECF No. 38]. Mr. Walton then sent a letter in which he stated, in part, that he "asks for 1.3 million, but will settle for $600,000." [ECF No. 42]. The Court issued an order seeking clarification as to whether Mr. Walton intended to seek monetary damages in this case. [ECF No. 43]. The Court stated that

if Mr. Walton did intend to seek damages, such would be construed to be a part of his original complaint pursuant to caselaw mandating liberal construction of pleadings from pro se litigants, and Defendants would be permitted to file a supplemental memorandum containing any arguments against such a claim. [Order 2, ECF No. 43].

Letters from Mr. Walton entered on November 16 and 20, 2020 confirmed that he did seek monetary damages and that he would not dismiss his claim for injunctive relief. [ECF Nos. 44–45]. Defendants filed a supplemental memorandum on December 28, 2020, to which Mr. Walton responded by letter entered on January 6, 2021.

## II.   LEGAL FRAMEWORK

Federal Rule of Civil Procedure 12(b)(6) offers a defense where a claimant has failed "to state a claim upon which relief can be granted." While a Rule 12(b)(6) motion cannot technically be filed after an answer to a complaint, it is well established that the "'defense of failure to state a claim upon which relief can be granted' may be advanced in a motion for judgment on the pleadings under Rule 12(c)," and that where a responsive pleading has previously been filed, courts treat the motion as one pursuant to Rule 12(c). *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (quoting Federal Rule of Civil Procedure 12(h)(2)). "As a general rule, a Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a 12(b)(6) motion to dismiss." *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1056 (8th Cir. 2018) (quotation omitted).

When analyzing a motion to dismiss, the Court assumes that the factual allegations in the complaint are true and takes all reasonable inferences from those facts in the most favorable light to the non-moving party. *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549

(8th Cir. 2008). However, the Court does not assume "the legal conclusions drawn by the pleader from the facts" to be true. *Westcott*, 901 F.2d at 1488. To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). And while the pleaded facts need not be detailed, the complaint "must include sufficient factual information to provide the grounds on which the claim rests, and to raise a right to relief above the speculative level." *Schaaf*, 517 F.3d at 549 (quotation omitted).

"When considering a Rule 12(b)(6) motion, the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Ashford v. Douglas Cnty.*, 880 F.3d 990, 992 (8th Cir. 2018) (quotation omitted). In addition, "[a] pro se complaint must be liberally construed." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014).

> When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework.

*Id.* (quoting *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004)). Accordingly, while Mr. Walton's letters were not given the effect of supplemental complaints or amendments to the original complaint, the Court will not ignore them in liberally construing the operative complaint for purposes of this motion. *See Coleman v. Correct Care Sols.*, 559 Fed. Appx. 601 (8th Cir. 2014) (assessing allegations raised in plaintiff's filings subsequent to the complaint); *Pratt v. Corr. Corp. of Am.*, 124 Fed. Appx. 465 (8th Cir. 2005) (holding that it was error for

4

the district court to not consider the allegations accompanying the pro se plaintiff's motion to amend, response to the defendants' motion to dismiss, and the attachments thereto—in addition to the complaint); *Anthony v. Runyon*, 76 F.3d 210, 214 (8th Cir. 1996) ("[W]e believe that the district court should have considered the new allegations contained in the response to the motion to substitute and dismiss.").

### III.  ANALYSIS

Mr. Walton seeks both injunctive relief and monetary damages. Even when reviewed through the liberal lens appropriate for pro se litigants, both types of claims must be dismissed.

#### A. Injunctive Relief

In his complaint, Mr. Walton seeks relief in the form of an "order to provide adequate medical care—transfer to medical unit to monitor and provide sleep/movement accommodations." That is, Mr. Walton seeks injunctive relief. Defendants argue that Mr. Walton's transfer to another facility renders his claim for injunctive relief moot because he has been removed from the alleged unlawful conditions. The Court agrees. It is well established that an inmate's claim for an injunction is mooted by the transfer to another facility where he is no longer subject to the same conditions. *Pratt v. Corr. Corp. of Am.*, 267 Fed. Appx. 482 (8th Cir. 2008); *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999); *Hickman v. Missouri*, 144 F.3d 1141, 1142 (8th Cir. 1998). Mr. Walton does not allege that he somehow remains in the custody of Defendants or that he continues to be subjected to the violations of his rights he alleges. Accordingly, the Court recommends granting Defendants' Motion to Dismiss [ECF. No. 35] with respect to Mr. Walton's request for injunctive relief.

## B. Monetary Damages

42 U.S.C. § 1983 grants a private cause of action against a state actor who "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Mr. Walton brings his § 1983 claim against Blue Earth County and Blue Earth County Sheriff Peterson. However, because the latter is sued only in his official capacity, this claim is also effectively a suit against Blue Earth County. *Wade v. Tompkins*, 73 Fed. Appx. 890, 893 (8th Cir. 2003) ("A suit against [the Sheriff] in his official capacity is actually a suit against the County.").

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* Therefore, when courts evaluate a § 1983 claim against a municipality, they must apply "rigorous standards of culpability and causation . . . to ensure that the municipality is not held liable solely for the actions of its employees." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Mr. Walton's claim is that the Defendants' "failure to provide adequate medical care" violated his rights and gave rise to a claim under § 1983. [Compl. 3, ECF No. 1]. He argues that Sheriff Peterson "is obligated to provide medical care to prisoners under his control in

6

the B.E.C. Jail" and that he failed to do so. [Compl. 4, ECF No. 1]. The allegations of wrongful conduct contained in Mr. Walton's complaint are that he was not provided a wheelchair for his gunshot wound, not provided medical care or "taken to the hospital when [his] blood pressure spiked" despite a risk of clotting, and not provided "assistance with pain or lack of sleep." [Compl. 4–5, ECF No. 1]. In his subsequent filings with the Court, Mr. Walton expounded upon these allegations and alleged additional facts, which included the following[1]:

- When Mr. Walton sought attention for pain in his left leg, nursing staff arrived 15 minutes later "and nothing happened." [Letter 2, ECF No. 6].

- Mr. Walton had to repeatedly request mental health services for "depression, anxiety stress, and PTSD" for days before receiving it, and the services were ineffective. [Letter 5–7, ECF No. 6; Letter 3, ECF No. 18].

- Nursing staff canceled a scheduled visit with Mr. Walton due to a lack of time. [Letter 1, ECF No. 17].

- An appointment with Mr. Walton's doctor "was never done nor was it rescheduled." [Letter 1–2, ECF No. 17].

- Prison staff denied Mr. Walton's pain medication after three days, stating that he did not need it. [Letter 1, ECF No. 18].

Even when construed liberally, Mr. Walton's complaint and subsequent filings do not allege any facts that would tend to support—much less make plausible—a cognizable claim against these Defendants.

---

[1] Mr. Walton alleges many facts in addition to these. They are not included here, however, because they are either duplicative or irrelevant to his sole claim: failure to provide adequate medical care.

7

A municipality may be liable under § 1983 where "the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016) (citations omitted). Mr. Walton does not specify a particular theory of municipal liability, so the Court will consider each in turn.

### 1. Official Policy

Municipalities, including local officials in their official capacities, may be liable for an official policy where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy." *Monell*, 463 U.S. at 659; *Corwin*, 829 F.3d at 700 ("[A]n official policy[ is] a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."). Mr. Walton neither asserts that the alleged violations of his rights were the result of an official policy, nor identifies any policy or procedure from which the Court might infer such an argument.

### 2. Unofficial Custom

"[A]n act performed pursuant to a custom that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Perkins v. Hastings*, 915 F.3d 512, 521 (8th Cir. 2019) (quotation omitted). To establish municipal liability for an unofficial custom, Mr. Walton must show: (1) "The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;" (2)

8

"[d]eliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct;" and (3) "[t]hat [Mr. Walton] was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation." *Johnson v. Douglass Cnty. Med. Dept.*, 725 F.3d 825, 828 (8th Cir. 2013).

Again, Mr. Walton does not allege that the acts violating his rights were pursuant to a widespread custom, and the conduct about which he complains does not permit an inference of one. The acts Mr. Walton alleges are singular and isolated. He does not allege, for example, that other inmates at the Blue Earth County Jail were similarly denied their medication, denied a wheelchair when requested, or given substandard care from nursing staff. *See id.* at 829 (holding that the county was not liable under a "custom" theory in part because the plaintiff brought "no evidence that other inmates have been denied medication"). Neither does Mr. Walton allege any facts suggesting that policymaking officials, including Sheriff Peterson, had notice of these alleged violations and were deliberately indifferent towards or tacitly authorized them.

### 3. Failure to Train or Supervise

Finally, municipal liability under a theory of "failure to train or supervise" also requires a showing of the municipality's "deliberate indifference to the constitutional rights of persons with whom [the government employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). As stated above, Mr. Walton has not presented any facts to support the idea that any municipal official was aware of and deliberately indifferent towards the alleged violations. And there is no suggestion that training was inadequate.

9

## IV. CONCLUSION

In light of the foregoing, taking all of Mr. Walton's factual assertions as true and construing his filings liberally, the Court recommends dismissing this matter because he does not allege sufficient facts to state a facially plausible claim for relief. *Twombly*, 550 U.S. at 545. The Court concludes that, whatever the merits of any claim Mr. Walton might have against other defendants, there is no legally cognizable theory of these Defendants' liability for any of the actions Mr. Walton alleges. At bottom, Mr. Walton's § 1983 claim attempts to hold Blue Earth County liable solely for the actions of its employees, a practice the Supreme Court has repeatedly and consistently disallowed. *E.g.*, *Iqbal*, 556 U.S. at 676; *Brown*, 520 U.S. at 405; *Monell*, 436 U.S. at 694. Such efforts do not succeed in this case, either.

Accordingly, the Court makes the following **Recommendations:**

1. That Defendants' Motion to Dismiss [ECF No. 35] be **GRANTED**; and

2. That this action be **DISMISSED** for failure to state a claim upon which relief can be granted.

Date: March 1, 2021          s/ *Katherine Menendez*
                                                   Katherine Menendez
                                                   United States Magistrate Judge